UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| KATHY WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 5:16-cv-00342-GFVT |
| | ) | |
| V. | ) | |
| | ) | |
| NANCY A. BERRYHILL, | ) | **MEMORANDUM OPINION** |
| Acting Commissioner Of Social Security, | ) | **&** |
| | ) | **ORDER** |
| Defendant. | ) | |
| | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Kathy Williams seeks judicial review of an administrative decision of the Commissioner of Social Security, which denied her claim for supplemental security income and disability insurance benefits. Ms. Williams brings this action pursuant to 42 U.S.C. § 405(g), alleging various errors on the part of the ALJ considering the matter. The Court, having reviewed the record and for the reasons set forth herein, will **DENY** Ms. William's Motion for Summary Judgment and **GRANT** the Commissioner's.

**I**

**A**

Plaintiff Kathy Williams initially filed an application for Title II disability insurance benefits on June 5, 2013, alleging disability beginning on May 6, 2010. [Transcript (hereinafter, "Tr.") 303.] Ms. Williams's claims were initially denied by an Administrative Law Judge, who subsequently conducted a hearing with Ms. Williams on March 21, 2014. *Id.* at 264. On June 19, 2015, the ALJ rendered an unfavorable decision denying Ms. Williams's claims for benefits. *Id.* at 146.

To evaluate a claim of disability for Title II disability insurance benefit claims, an ALJ conducts a five-step analysis. *Compare* 20 C.F.R. § 404.1520 (disability insurance benefit claim) *with* 20 C.F.R. § 416.920 (claims for supplemental security income).[1] First, if a claimant is performing a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, he does not have a severe impairment and is not "disabled" as defined by the regulations. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is "disabled." C.F.R. § 404.1530(d). Before moving on to the fourth step, the ALJ must use all of the relevant evidence in the record to determine the claimant's residual functional capacity (RFC), which assess an individual's ability to perform certain physical and metal work activities on a sustained basis despite any impairment experienced by the individual. *See* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545.

Fourth, the ALJ must determine whether the claimant has the RFC to perform the requirements of his past relevant work, and if a claimant's impairments do not prevent him from doing past relevant work, he is not "disabled." 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his RFC, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is "disabled." 20 C.F.R. § 404.1520(f).

Through step four of the analysis, "the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from

---

[1] For purposes of a disability insurance benefits claim, a claimant must show that his impairments were disabling prior to the date on which his insured status expired. 20 C.F.R. § 404.131. Beyond this requirement, the regulations an ALJ must follow when analyzing Title II and Title XVI claims are essentially identical. Hereinafter, the Court provides primarily the citations to Part 404 of the relevant regulations, which pertain to disability insurance benefits. Parallel regulations for supplemental security income determinations may be found in Subpart I of Part 416.

performing her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, the burden shifts to the Commissioner to identify a significant number of jobs that accommodate the claimant's profile, but the claimant retains the ultimate burden of proving his lack of residual functional capacity. *Id.*; *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).

At the outset of this case, the ALJ determined that Ms. Williams met the insured status requirements of the Social Security Act through March 31, 2017. Tr. 151; *see also* 20 C.F.R. § 404.131. Then at step one, the ALJ found Ms. Williams had not engaged in substantial gainful activity since the alleged disability onset date, May 6, 2010. Tr. 151. At step two, the ALJ found Ms. Williams to suffer from the following severe impairments: fibromyalgia, osteoarthritis, obesity, asthma, and systemic lupus erythematosus. *Id.* At step three, the ALJ determined her combination of impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404 or Part 416. *Id.* at 153. Before moving on to step four, the ALJ considered the record and determined that Ms. Williams possessed the following residual functioning capacity:

> [Ms. Williams] has the residual functional capacity to perform a range of light work as defined in 20 C.F.R 404.1567(b) as follows: lift and carry 20 pounds occasionally and ten pounds frequently; stand and walk six hours of an eight hour day; sit six hours of an eight hour day; frequently push and pull with the bilateral upper and lower extremities up to the exertional limitations; frequently reach overhead and in all other directions; frequently handle, finger, and feel; occasionally climb ramps and stairs but never ropes or scaffolds; and occasionally stoop, kneel, crouch, or crawl. She should avoid all exposure to hazards such as unprotected heights and moving machinery; should avoid exposure to dust, fumes, and pulmonary irritants; extreme cold and vibration; and should avoid all occupations involving exposure to sunlight.

*Id.* at 153–54. After explaining the RFC, the ALJ found at step four that, based on this RFC, her age, education, and work experience, Ms. Williams is capable of performing past relevant work

as a data entry clerk, as well as other jobs existing in the national economy. *Id.* at 156. Accordingly, the ALJ found at step five that Ms. Williams was not disabled from May 6, 2010, through the date of the decision, pursuant to 20 C.F.R. §§ 404.1520(f). *Id.* at 157.

Following the unfavorable decision of the ALJ, Ms. Williams appealed to the Appeals Council. Her request for review was denied on July 19, 2016. *Id*. at 1. Ms. Williams thereafter filed this action on September 7, 2016. [R. 1.]

**B**

The Court's review is generally limited to whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319-20 (6th Cir. 1987). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The substantial evidence standard "presupposes that there is a zone of choice within which [administrative] decision makers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

To determine whether substantial evidence exists, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). However, a reviewing court may not conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the Commissioner's

4

decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *See Ulman*, 693 F.3d at 714; *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

## II

Ms. Williams presents two arguments to this Court as grounds for relief from the ALJ's unfavorable decision. Specifically, she argues (1) the ALJ erroneously failed to consider Listing 14.02A for Systemic Lupus Erythematosus (SLE) and (2) the ALJ erroneously discredited the testimony of Ms. Williams. [R. 12-1 at 5.] For the reasons set forth below, Ms. Williams's arguments do not warrant a reversal of the ALJ's determination.

### A

First, Ms. Williams argues that the ALJ's failure to find her disabled under Listing 14.02A was not supported by substantial evidence. At Step Three of the sequential evaluation process, the claimant has the burden of showing that his impairments are equal or equivalent to a listed impairment. *Malone v. Comm'r of Soc. Sec.*, 507 F. App'x 470, 472 (6th Cir. 2012) (citing *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001)). Because "the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary," the evidentiary standards for determining disability by meeting the listed impairments are stricter than the standards employed at later steps in the sequential evaluation process. *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990); *see* 20 C.F.R. §§ 404.1526, 416.926. "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* at 530 (emphasis in original); *see also Malone*, 507 F. App'x at 472 (quoting *Zebley*, 493 U.S. at 530).

5

A claimant only meets Listing 14.02 if, after a diagnosis of SLE, medical documentation shows either (1) involvement of two or more organs or body systems, along with one of the organs or body systems involved to at least a moderate level of severity and at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) or (2) repeated manifestations of SLE, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and either limitation of activities of daily living, limitation in maintaining social function, or limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 14.02. The ALJ found that Ms. Williams did not have an impairment that is listed in Part 404, but did not expressly state that Ms. Williams did not meet Listing 14.02. Tr. 153. However, the ALJ is not required to make specific findings as to specific listings, as he expressly found Ms. Williams's impairments did not meet a listing. *See Malone*, 507 F. App'x at 472.

The parties agree that Ms. Williams has been diagnosed with and suffers from SLE. Ms. Williams argues that her medical documentation shows the involvement of two or more organs or body systems involved to at least a moderate level of severity and at least two of the constitutional symptoms or signs.[2] [R. 12-1 at 6.] Under 20 CFR Pt. 404, major organ or body system involvement includes "Respiratory (pleuritic, pneumonitis), cardiovascular (endocarditis, myocarditis, pericarditis, vasculitis), renal (glomerulonephritis), hematologic (anemia, leukopenia, thrombocytopenia), skin (photosensitivity), neurologic (seizures), mental (anxiety, fluctuating cognition ("lupus fog"), mood disorders, organic brain syndrome, psychosis, or

---

[2] Ms. Williams does not argue for the alternative definition under § 14.02(2). However, the ALJ evaluated the record and determined she did not have a limitation in either daily living, social function, or completion of tasks when evaluating whether Ms. Williams met a listing under § 12.00 for mental disorders. Tr. 152. Therefore, the Court focuses only on the requirements under § 14.02(1).

6

immune system disorders (inflammatory arthritis)." § 14.00D1.  Ms. Williams presented evidence of several years of photosensitivity (Tr. 562), malar facial rash (Tr. 586), costochondritis (Tr. 675), depression and anxiety (Tr. 701), osteoarthritis (Tr. 641), and a high rheumatoid factor (Tr. 522).  Thus, Ms. Williams has met her burden of demonstrating the involvement of two or more organs or body systems.

However, Ms. Williams does not present evidence that at least one of these conditions present with at least a moderate level of severity.  The ALJ considered her depression and anxiety, but found her to only have a mild limitation after Ms. Williams herself testified she was able to care for her own needs, watch television, play video games, wash dishes, do laundry, sweep, mop, vacuum, take and edit photographs, use email, and worked part time.  Tr. 152.  The ALJ also considered Ms. Williams's diagnosis of asthma, but found no documentation of hospitalizations or acute attacks.  Tr. 155.  Additionally, Ms. Williams testified that her asthma attacks were rare.  Tr. 179–80.

The medical reports documenting Ms. Williams's photosensitivity and malar facial rashes do not indicate its level of severity.  She testified to the ALJ that she begins to turn red after fifteen minutes, and she gets these rashes once or twice a week.  Tr. 178, 181.  Her doctors prescribed Benadryl, cortisone cream, and sunscreen, but did not identify whether her photosensitivity was medically "severe."  *Id.*  Dr. Asad Fraser listed her rashes as "normal."  Tr. 527.  Ms. Williams has not identified any records showing these conditions presented with at least a moderate level of severity.

While Ms. Williams presented evidence of costochondritis, but included no records demonstrating the severity or treatment pursued for such pain.  Tr. 675.  Similarly, she presents evidence of arthritis, but fails to demonstrate moderately severe arthritis.  The ALJ considered

7

the records of her rheumatology examinations and found all symptoms to be normal. Tr. 154. In 2011, Dr. Asad Fraser found her to have no tender points, effusions, or synovitis, with a normal range of motion. Tr. 526–28. Two years later, Dr. Lucia Hardi also examined Ms. Williams and found her to have a normal gait, normal range of motion, and normal muscle strength, without any joint swelling, warmth, or tenderness. Tr. 587–88. Dr. William Waltrip evaluated her for a disability determination, and determined she had no limitations in her joints and a full range of motion with normal gait. Tr. 656–59. In 2015, Dr. Hardi recorded joint tenderness but a normal gait. Tr. 734–36.

Thus, after reviewing the record, the Court finds that the ALJ's decision finding Ms. Williams does not meet Listing 14.02 is supported by substantial evidence. Counsel for Ms. Williams did argue for that listing before the ALJ, yet failed to provide any evidence as to the severity of Ms. Williams's symptoms, therefore, Ms. Williams did not meet the burden of demonstrating all specified medical criteria. *See Zebley*, 493 U.S. at 530; *Hayes*, 357 Fed. App'x at 675. "An impairment that manifests only some of the criteria, no matter how severely, does not qualify." *Zebley*, 493 U.S. at 530.

**B**

Next, Ms. Williams claims the ALJ erred by failing to give sufficient weight to her own evaluations of her symptoms. As an initial matter, the Court recognizes that "neither this Court nor the ALJ 'may [ ] focus and base [its] decision entirely on a single piece of evidence, and disregard other pertinent evidence.'" *Young v. Comm'r of Soc. Sec.*, 351 F. Supp. 2d 644, 649 (E.D. Mich. 2004) (quoting *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978)). In other words, an ALJ "may not pick and choose the portions of a single report, relying on some and ignoring others, without offering some rationale" for the decision. *Id*. However, as has already

been explained, this Court is limited to deciding whether the Commissioner's decision, "is supported by substantial evidence and was made pursuant to proper legal standards." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (citing *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007)). "If the Commissioner's decision is based upon substantial evidence, we must affirm, even if substantial evidence exists in the record supporting a different conclusion." *Id*. "The Court may not re-weigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion." *Putman v. Astrue*, 2009 WL 838155 at *5 (E.D. Tenn. Mar. 30, 2009); see also *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999). Thus, even if Ms. Williams is correct that substantial evidence also supports her conclusion, that would not justify granting her motion for summary judgment so long as substantial evidence of the record also supports the conclusion of the ALJ.

An individual's RFC is an administrative determination about the person's maximum ability to perform work-related activities and reflects the most that the person can do in a work-related setting despite his or her limitations. SSR 96-5p, 1996 WL 374183, at *5; 20 C.F.R. § 404.1545(a)(1). This assessment "is based upon consideration of all relevant evidence in the case record," including medical evidence as well as the individual's own statements of what he or she can do. SSR 96-5p, 1996 WL 374183, at *5; 20 C.F.R. § 404.1545(a)(3). Given the role of the Court at this stage in the process, the key issue is whether the ALJ's determination is supported by substantial evidence. *See* 42 U.S.C. § 405(g). As noted above, this Court must give deference to the Commissioner's decision "[e]ven if this Court might have reached a contrary conclusion of fact . . . so long as [the decision] is supported by substantial evidence." *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854-55 (6th Cir. 2010); *Ulman*, 693 F.3d at 714.

The regulations require the ALJ to consider all relevant evidence in the record. 20 C.F.R. § 404.1527(b); § 416.927. The ALJ considered Ms. Williams's testimony, along with the opinions of medical professionals, and found Ms. Williams not to be entirely credible:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could cause some of the alleged symptoms. However, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision. No treating physician has stated that the claimant is disabled, and examinations have repeatedly described mostly normal findings with normal gait, normal range of motion, and normal muscle strength despite some tenderness. The claimant remains active, and testified that she continued to work at least part time until a couple of weeks before the hearing. At the hearing, she stated that she cares for her personal needs, watches television, plays video games, washes dishes, does laundry, sweeps, mops, vacuums, takes photographs and manipulates them on a computer, and uses email.

Tr. 155. All of this was supported by the opinions of Dr. Fraser, Dr. Hardi, and Dr. Waltrip, who, as stated above, did not find her symptoms to be severe under the definition required for disability. *Id*. at 526–28; 587–88; 656–59; 734–36.

When evaluating Ms. Williams's statements, the ALJ followed Social Security Ruling (SSR) 96-7p.[3] This requires the ALJ to "consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." SSR 96-7. The ALJ did this, weighing Ms. Williams's testimony concerning her symptoms, her testimony about her daily activities, her husband's statements, and the medical documentation. Tr. 154–55. The ALJ did not disregard her statements simply because they were not substantiated by medical documentation, but rather because the medical records and Ms.

---

[3] The ALJ rendered his decision on June 19, 2015. Tr. 146. Shortly thereafter, on March 28, 2016, SSR 16-3p superseded SSR 96-7p.

Williams's own testimony contradicted a finding of "severe" complications of her SLE. SSR 96-7(4); Tr. 155. Additionally, the ALJ outlined the specific reasons for his finding on credibility. SSR 96-7(5); Tr. 154–56.

The ALJ's evaluation of Ms. Williams's testimony is entitled to deference by this Court. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007). As stated previously, "The Court may not re-weigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion." *Putman v. Astrue*, 2009 WL 838155 at *5 (E.D. Tenn. Mar. 30, 2009); see also *Her*, 203 F.3d at 389–90. So long as the ALJ cited substantial evidence to support his conclusions, this Court may not re-evaluate his determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012). Here, the ALJ's decision is supported by substantial evidence and therefore does not warrant dismissal.

### III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that Plaintiff Kathy Williams Motion for Summary Judgment [R. 12] is **DENIED**, but the Commissioner's Motion for Summary Judgment [R. 14] is **GRANTED**. Judgment in favor of the Commissioner will be entered promptly.

This the 26th day of March, 2018.

Gregory F. Van Tatenhove
United States District Judge